IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RACQUEL LEWIS-DAVIS,

    *Plaintiff*,

v.

BOARD OF EDUCATION OF
BALTIMORE COUNTY, *et al.*,

    *Defendants*.

Civil Action No. ELH-20-0423

**MEMORANDUM OPINION**

Raquel Lewis-Davis, the self-represented plaintiff, has sued multiple defendants, alleging a vast conspiracy to discriminate against her, harass her, violate her privacy, and harm her.[1]  The remaining defendants are the Board of Education of Baltimore County;[2] Paula Boykin, a supervisor at Baltimore County Public Schools ("BCPS"); and Sally Chapman, another BCPS employee (collectively, the "BCPS Defendants").

The operative complaint is the Second Amended Complaint.  ECF 70 (the "Complaint").  Plaintiff asserts multiple claims.  As best as I can determine, they are as follows: Count I asserts discrimination on the basis of disability, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 *et seq.* (the "ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*  ECF

---

[1] As discussed, *infra*, when plaintiff filed suit, she submitted an application to proceed without prepayment of fees.  ECF 1.  I granted that request.  ECF 10.

[2] Plaintiff initially named the Baltimore County Public Schools Infants & Toddlers Program in the suit.  *See* ECF 2 at 1.  In its original motion to dismiss, the BCPS Defendants argued that the Board of Education of Baltimore County is the proper party.  *See* ECF 36-1 at 14-15.  Mindful of plaintiff's pro se status, I denied the motion, without prejudice, because plaintiff "had already submitted a new summons naming the proper defendants."  ECF 81 at 17.

70 at 91.  Count II asserts a retaliatory hostile work environment claim, in violation of Title VII, the ADA, the Rehabilitation Act, and several other federal statutes.  *Id*. at 92-93.  Count III alleges a claim for intentional infliction of emotional distress, presumably under Maryland law, although plaintiff also cites several federal statutes.  Count IV asserts "Violation of Privacy by way of Intrusion of Solitude."  Count V alleges "Conspiracy of Rights," citing several federal statutory provisions.    Count VI alleges defamation.  *Id*. at 97-98.  And, Count VII asserts wrongful termination, in violation of Title VII, the ADA, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq*. Plaintiff seeks a total of $45,590,000 in damages.  *Id*. at 102.[3]

Pursuant to Fed. R. Civ. P. 12(b)(6), the BCPS Defendants have moved to dismiss the Complaint (ECF 70), for failure to state a claim.  ECF 87.  The motion is supported by a memorandum.  ECF 87-1 (collectively, the "Motion").  Two exhibits are attached to the Motion. ECF 87-2; ECF 87-3.  Plaintiff opposes the Motion.  ECF 92 (the "Opposition").  And, she submitted fifteen exhibits.  ECF 92-1 to 92-15.  The BCPS Defendants have replied.  ECF 96 (the "Reply").

Plaintiff filed a third "Amended Complaint" on June 1, 2021, containing additional claims and adding more defendants, as described *infra*.  ECF 89.  Plaintiff did not seek leave of court before filing this amended complaint.  In ECF 91, the BCPS Defendants have moved to strike ECF 89.

---

[3] As a jurisdictional basis, plaintiff cites 28 U.S.C. § 1367, regarding supplemental jurisdiction, and *Arbaugh v. Y&H Corp*., 546 U.S. 500 (2006).  Under 28 U.S.C. § 1331, the Court has federal question jurisdiction over plaintiff's claims that arise under federal law.  And, for the state law claims, the Court could exercise supplemental jurisdiction under § 1367.  Because the BCPS Defendants are citizens of Maryland (*see* ECF 85) and plaintiff appears to be a citizen of New York as of the time of filing (*see* ECF 2 at 1), jurisdiction may also be based on diversity, pursuant to 28 U.S.C. § 1332.

Plaintiff has filed a steady stream of motions.  These include motions for joinder of other persons and entities as defendants:  ECF 97 ("Baltimore County Government" and "State of Maryland"); ECF 98 ("Department of Homeland Security" and "Department of Defense"); ECF 101 (Davis); ECF 104 ("Community College of Baltimore County (CCBC) Continuing Education Department (CONED)"); ECF 105 (Coates); and ECF 108 ("City of Philadelphia" entities).  Plaintiff has also filed a "Motion for Leave of Court to Enter Answers to Defendants [sic] Motion to Dismiss" (ECF 102); a "Memorandum for Leave for Court to take Civil Action to Enjoin the Obstruction of Justice" (ECF 103); a "Motion for Leave of Court to Order a Cease and Desist" (ECF 109); a "Memorandum for Leave of Court" ( ECF 110); and a "Memorandum for Leave of Court to Include Evidence and Charge Considerations."  ECF 114.   BCPS filed a response to ECF 114. *See* ECF 115.

Plaintiff also filed a "Motion to Amend Claim" with respect to several Philadelphia entities (ECF 111) and an "Emergency Motion for a Temporary Restraining Order and Injunction." ECF 112.  Because those filings pertained to a separate case filed by plaintiff in the Eastern District of Pennsylvania, I denied them, without prejudice, by Order dated September 17, 2020.  *See* ECF 113.

No hearing is necessary to resolve the motions.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion (ECF 87).  I shall also grant the BCPS Defendants' Motion to Strike (ECF 91) and deny plaintiff's motions.[4]

---

[4] There is some uncertainty as to whether plaintiff intended to include CCBC as a defendant in her First Amended Complaint (ECF 40).  When she sought the Court's permission to amend the complaint, she asked to add Singleton as a defendant.  ECF 22 at 1.  Plaintiff requested a summons for "Community College of Baltimore County – Mildred Singleton."  ECF 29.  Her First Amended Complaint mentions both Singleton and CCBC at various points.  Singleton moved to dismiss (ECF 46).  CCBC has not appeared.  In my previous opinion in this case (ECF 81), I treated the

## I.      Factual and Procedural Background[5]

Plaintiff filed suit in the United States District Court for the Eastern District of Pennsylvania on February 7, 2020, against the BCBS defendants.  *See* ECF 2.  That court transferred the case to the District of Maryland, stating that there was no apparent basis for venue in Pennsylvania. ECF 6.  Plaintiff then filed an amended complaint against both the BCPS Defendants and a number of other defendants: Mildred C. Singleton, the Human Resources Director of the Community College of Baltimore County ("CCBC"), another former employer; Alexis Coates, identified as a private contractor; Reginald Giles, who may be a former boyfriend; Emmitt K. Davis, Jr., plaintiff's ex-husband, with whom she has a child; and Jeffrey Kreshtool, Esquire, plaintiff's former lawyer in her divorce proceedings.  ECF 40.  A variety of motions from both plaintiff and the defendants followed.  In addition, plaintiff submitted a proposed second amended complaint (ECF 70), which includes numerous exhibits.  ECF 70 is 196 pages long and consists of several separate documents that appear to be directed against different defendants.  The portion of ECF 70 that appears to be directed against the BCPS Defendants is located on pages 84 through 146, including numerous exhibits.

I issued a Memorandum Opinion (ECF 81) and Order (ECF 82) in this case on April 30, 2021, in which I dismissed the suit as against Singleton, Coates, Giles, Davis, and Kreshtool.  *See* ECF 81 at 19-38, 40-41.  I denied, without prejudice, the BCPS Defendants' motion to dismiss for

---

claims as lodged against Singleton and dismissed the suit as to her, referring to the BCPS Defendants as the only remaining defendants.  *Id.* at 24-32, 43.

[5] At this juncture, I must assume the truth of any well-pleaded facts alleged in the suit.  *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).  Because plaintiff's claims against the BCPS Defendants are all that remain, I focus on those facts alleged in ECF 70 pertinent to the BPCS Defendants. And, I incorporate here the factual summary set forth in my previous Memorandum Opinion (ECF 81), where appropriate.

failure to name the proper party and for insufficient service of process. *See id.* at 17-19. And, I granted plaintiff's motion to amend her complaint (ECF 70) with respect to the BCPS Defendants *only*. *See* ECF 81 at 42-44. Therefore, ECF 70 is now the operative complaint with respect to the BCPS Defendants. *Id.* at 44. I shall refer to ECF 70 as the "Complaint."

As noted, plaintiff alleges that she is the victim of a broad campaign of discrimination and harassment. ECF 70 at 85. The institutions and individuals involved in this alleged conspiracy include two of plaintiff's former employers, CCBC and BCPS, and some of their employees, including Singleton from CCBC and Chapman and Boykin from BCPS; her ex-husband, Davis; her former lawyer, Kreshtool; a former boyfriend, Giles; and a computer engineer, Coates. *Id.* at 100. Plaintiff claims that the purpose of this alleged conspiracy is to discredit her by making her appear mentally ill so that her ex-husband will ultimately be awarded custody of their minor child. *Id.* And, she alleges that the harassment campaign "has been organized . . . to intimidate and dissuade" her "from bringing forth this claim which can prove that she was in fact discriminated against due to protected activity." *Id.*

According to plaintiff, the conspiracy against her began during her employment with CCBC, where she worked from March 2014 until March 2016. *Id.* During that time, Singleton was employed as CCBC's Human Resources Director.

Plaintiff claims that she was "constructively discharged" from her position at CCBC in March 2016, because she was "engaging in protected activity." *Id.* at 92, 100. The exact nature of her activity is not clear, but apparently it relates to complaints regarding treatment or conditions at CCBC. *Id.* at 92. After plaintiff left CCBC, she worked for "Woodstok Job Corps" and "Antwerpen Hyundai of Clarksville," where she alleges that she endured the same campaign of harassment. *Id.* at 98, 100.

5

In 2017, plaintiff began working at the BCPS Infants & Toddlers program as a "Service Coordinator." *Id*. at 100, 108. There, she alleges that Boykin, a supervisor, and Chapman, a "Specialist," continued the "campaign of harassment" begun by "their education sibling," CCBC. *Id*. at 100, 108.

Specifically, plaintiff alleges that BCPS staff members subjected her to "name calling," "sniffing," and other "unwelcome behavior." *Id*. at 86. Staff repeatedly called plaintiff names and insinuated that she had mental health issues. *Id*. For example, she alleges that staff referred to her as a "hot mess," "paranoid," "crazy," and "peculiar." *Id*. at 86-87. Plaintiff also claims an unnamed staff member said, "don't let me get ICE up in here," and that a "Get Help" pamphlet from the House of Ruth, which provides assistance to victims of domestic violence, was left in her mailbox. *Id*. at 88, 120-21. In addition, "[c]olleagues sniffed plaintiff and her environment . . . on at least 20 occasions." *Id*. at 87.

Further, plaintiff alleges that, when she attempted to talk with other staff members to rectify the situation, they were dismissive towards her, minimized the claimed incidents, or implied she should "be quiet." *Id*. at 86-88, 90-91. Plaintiff details two meetings regarding her concerns, which occurred in November 2017 and February 2018. *Id*. at 88, 90-91. At the 2017 meeting, plaintiff asserts "Defendant 1" called plaintiff "hypersensitive," made remarks about her mental health, and denied that the "ICE" comment could have occurred. *Id*. at 88. At the 2018 meeting, attended by both "Defendant 1" and "Defendant 2," plaintiff's concerns were "minimized." *Id*. at 90-91.[6]

---

[6] Plaintiff does not define "Defendant 1" or "Defendant 2." However, she refers to the 2018 meeting as having been with "Defendant 1" and "Defendant 2" (ECF 70 at 90-91), and the Conference Summary indicates that Boykin and Chapman were the other two participants at that meeting, along with plaintiff. *Id*. at 108.

A "Conference Summary" of this meeting is attached to the Complaint.  *Id.* at 108-09. According to the document, plaintiff identified "three staff members" as "making her work environment uncomfortable."  *Id.* at 108.  The Summary states that while there perhaps were "unfriendly or insensitive" actions, "[t]here was no information shared that would indicate that would indicate that Ms. Lewis is being bullied or intentionally targeted by these individuals."  *Id.* at 108-09.  The Summary concludes: "Ms. Lewis needs to identify strategies and actions she can take to improve interactions and relationships in order to effectively perform her roles and responsibilities as service coordinator."  *Id.* at 109.

Around this time, an "EEO Officer" at BCPS "prefilled" an "Employee Referral Form" for plaintiff to sign, identifying "Coping/Work-Life Balance" under the section "Skill/Behaviors to Address."  *Id.* at 96; ECF 92-7 (the form).  Plaintiff "made corrections" to the form.  ECF 70 at 96.  Plaintiff also alleges that "Defendant 2" tried to "force Plaintiff out of therapy with a trusted therapist from the [Employee Assistance Program ("EAP")]" to a new therapist.  *Id.*; ECF 92-15 (EAP form).

Lewis-Davis also makes a number of allegations to the effect that technology has been used to spy on her and violate her privacy.  She asserts, ECF 70 at 88: "Plaintiff was able to find several items in her technology that are focused on tracking, listening, monitor and simulate Plaintiffs actions, [and] monitor Plaintiffs emotions [sic] . . . ."  Plaintiff recounts several incidents that she believes demonstrate that staff members had access to her private conversations or messages.  *Id.* at 88-90.

In January 2019, "Plaintiff was wrongfully terminated [by BCPS] for misconduct."  *Id.* at 98.  "Plaintiff believes she was discharged as ongoing retaliation stemming from CCBC and to cover up illegal practices of cyberstalking, defaming, and hijacking devices of Plaintiff to discredit

her and keep her from making a claim in court of discrimination." *Id.* Moreover, plaintiff asserts this harassment and activity followed her to Philadelphia, where she moved after she left BCPS. *Id.*

Additional facts and allegations are included, *infra*.

## II.   Legal Standards

### A.  Section 1915 of 28 U.S.C.

Plaintiff is proceeding in forma pauperis ("IFP"). ECF 1; ECF 10. Plaintiff's IFP status obligates the Court to conduct a review of the allegations in the Complaint to determine whether the suit has a factual and legal basis. *See* 28 U.S.C. § 1915(e)(2)(B). And, the Court "shall dismiss the case at any time" if it determines that the action "is frivolous or malicious"; "fails to state a claim on which relief may be granted"; or "seeks monetary relief against a defendant who is immune from such relief." *Id.*

In *Neitzke v. Williams,* 490 U.S. 319 (1989), the Supreme Court concluded that a district court may dismiss the complaint of a pro se litigant under 28 U.S.C. § 1915 when the complaint includes only a "fanciful factual allegation" and lacks "an arguable basis either in law or in fact." *Id.* at 325; *see Denton v. Hernandez,* 504 U.S. 25, 32–33 (1992) ("[A] court may dismiss a claim as factually frivolous only if the facts alleged are 'clearly baseless,' a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.' As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them. An in forma pauperis complaint may not be dismissed, however, simply because the court finds the plaintiff's allegations unlikely.") (citations to *Neitzke* omitted).

*Neitzke* explained that the statute "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.* at 327.   Indeed, § 1915 was amended after *Neitzke* and *Denton*, such that now the statute *mandates* that a district court "shall dismiss" a case upon a finding that the complaint "fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii); *see Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (noting that "it is clear that Congress intended that the PLRA [Prison Litigation Reform Act of 1995] overrule the *Neitzke* holding that "section 1915(d) did not authorize district courts to dismiss, sua sponte, a complaint for failure to state a claim").

### B.  Fed. R. Civ. P. 8

Rule 8 of the Federal Rules of Civil Procedure sets forth the "baseline standard to which all complaints must adhere."  *Plumhoff v. Cent. Mortg. Co.*, 286 F. Supp. 3d 699, 701 (D. Md. 2017).  Under Rule 8(a), a complaint must "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]'"  Fed. R. Civ. P. 8(a)(2).  The rule also requires that "[e]ach allegation must be simple, concise, and direct."  Fed. R. Civ. P 8(d)(1).  The goal of Rule 8 is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957); 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1202 (3d ed. Apr. 2021) (describing the objectives of Rule 8).

Whether a complaint falls short of Rule 8 turns on "various factors, including the length and complexity of the complaint; whether the complaint was clear enough to enable the defendant to know how to defend himself; and whether the plaintiff was represented by counsel."  *Sewarz v. Long*, 407 F. App'x 718, 719 (4th Cir. 2011) (internal citations omitted).  A complaint does not

run afoul of Rule 8 merely because it is bloated with redundant allegations.  *See id.* (finding district court erred in dismissing 33-page complaint where the allegations were "intelligible and clearly delineated"); *see also United States ex rel. Garst v. Lockheed–Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Surplusage can and should be ignored.").  Nor does the occasional lapse in clarity doom a complaint.

To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  And, "an unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

### C.  Fed. R. Civ. P. 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  As noted, that rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Twombly*, 550 U.S. at 555-56.  And, to survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017).  However,

"a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (citation omitted).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th

Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must

be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) ) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Several exhibits were included with the Complaint, which I may consider. *See* ECF 70 at 103-46. Two exhibits were included with the Motion. One is the "Conference Summary" (ECF 87-2), concerning a meeting on February 13, 2018, between plaintiff, Paula Boykin, and Sally Chapman. The other is plaintiff's EEOC Charge form. *See* ECF 87-3 (the "Charge"). Notably, the Conference Summary (ECF 87-2) is also attached as an exhibit to the Complaint. *See* ECF 70 at 108-09. The Charge (ECF 87-3) is integral to the Complaint, and its authenticity is not challenged by plaintiff. *See* ECF 92 at 17. Therefore, these exhibits may be considered.

I also make reference to two of the exhibits that plaintiff attached to the Opposition: plaintiff's Employee Referral Form (ECF 92-7), and a form related to plaintiff's use of the Employee Assistance Program. *See* ECF 92-15. Both documents were referenced in the Complaint. Therefore, I may consider them.

14

### D.  Plaintiff's Pro Se Status

I am mindful that plaintiff is self-represented. Thus, her pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant.  See *Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).  Therefore, the Court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because he is self-represented.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986); *see also M.D. v. Sch. Bd. of City of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).  As the Fourth Circuit has said: "To do so would not only strain judicial resources by requiring those courts to explore exhaustively all potential claims of a pro se plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett*, 775 F.2d at 1278.

### E.  The *McDonnell Douglas* Proof Scheme

The seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is pertinent. It established a proof scheme, characterized as "a procedural device, designed only to establish an order of proof and production."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted).  Notably, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).  And, under the *McDonnell Douglas* approach, the "'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see also Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 726 (4th Cir. 2019); *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011).

Of course, the avenues or methods of proof pertain to trial.  At this juncture, reference to these methodologies merely serves to inform a court's evaluation of a motion to dismiss or for summary judgment.  *See Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019) (recognizing that "a Title VII plaintiff may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas Corp.* . . . ."); *Pettis v. Nottoway Cty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014) (same).

If the plaintiff chooses to proceed *at trial* under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Cent. Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017).  Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, and

"is 'not intended to be an inflexible rule,'" *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 228 (2015) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575 (1978)), the plaintiff is generally required to show that the employer took adverse action against an applicant "under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253.

If a plaintiff establishes a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle*, 650 F.3d at 336; *see Reeves*, 530 U.S. at 142; *Hurst v. District of Columbia*, 681 F. App'x 186, 189-90 (4th Cir. 2017) (per curiam). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11. The plaintiff must then prove, by a preponderance of evidence, "that the [employer's] proffered reason was not the true reason for the employment decision" and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516-20; *Adams v. Trs. of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original).

Conversely, if the defendant does not submit evidence of a legitimate basis for its actions, the factfinder may "infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on

17

impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978). And, if the defendant fails to meet the burden of producing "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis in original). This is because a legal presumption of intentional discrimination has been established. *Id.* at 510 n.3; *see Burdine*, 450 U.S. at 255 n.8 ("[T]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.").

As indicated, these two approaches establish the common methods by which a plaintiff may prove intentional employment discrimination *at trial*. *See Burns*, 96 F.3d at 731. At the motion to dismiss stage, however, a plaintiff need not establish a prima facie case of discrimination under *McDonell Douglas*. In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." The Court observed that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Thus, the Court said: "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ." *Id.* at 515.

However, as the Second Circuit has noted, the Supreme Court's holding in *Swierkiewicz* is arguably in tension with the Court's subsequent rulings in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). On the one hand, "[r]eading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required

to plead facts supporting even a minimal inference of discriminatory intent." *Id.* at 309.  On the other hand, in *Twombly*, the Court said that a plaintiff must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court clarified that the heightened pleading standard of Twombly is applicable in "'all civil actions' . . . ." *Iqbal*, 556 U.S. at 684.

In *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017), the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies[.]" *See also Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 747-48 (4th Cir. 2017) ("While a plaintiff need not plead a prima facie case to survive a motion to dismiss, a Title VII complaint is still subject to dismissal if it does not meet the ordinary pleadings standard under *Twombly* and *Iqbal*." (internal citations omitted)); *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584 (4th Cir. 2015), *cert. denied*, 577 U.S. 1138 (2016); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012).  Accordingly, at the motion to dismiss stage the question "is whether [the plaintiff] alleges facts that plausibly state a violation of Title VII 'above a speculative level.'" *Bing v. Brivo Systems*, 959 F.3d 605, 617 (4th Cir. 2020) (quoting *Coleman*, 626 F.3d at 190).

### III.    BCPS Defendants' Motion to Dismiss

As noted, the Complaint contains seven counts that pertain to the BCPS Defendants.  ECF 70 at 91-99.  I address each, in turn.

### A.  Count I (Disability Discrimination)

Count I asserts discrimination on the basis of "[p]erceived disability" in violation of Title VII, the ADA, and the Rehabilitation Act.  *Id*. at 91.  Disability is not a protected class under Title

VII, *see* 42 U.S.C. § 2000e-2(a)(1) (listing protected classes as "race, color, religion, sex, or national origin"), so I will focus on the ADA and the Rehabilitation Act.

The ADA, 42 U.S.C. §§ 12101 *et seq.*, was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." *Id.* § 12101(b)(2).  To that end, the statute "prohibits discrimination against persons with disabilities in three major areas of public life: employment, under Title I, 42 U.S.C. §§ 12111–12117; public services, under Title II, 42 U.S.C. §§ 12131-12165; and public accommodations, under Title III, 42 U.S.C. §§ 12182-12189." *A Helping Hand, LLC v. Baltimore County, Md.*, 515 F.3d 356, 361 (4th Cir. 2008) (citing *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004)).

As indicated, Title I of the ADA concerns employment.  It prohibits employment discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Title I applies to state and local government entities, and the BCPS Defendants do not dispute that it applies to them.[7]

Additionally, "discrimination against a qualified individual on the basis of disability" includes "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(B).  And, the ADA bars the

---

[7] Title II of the ADA prohibits discrimination in public services, but the Fourth Circuit has held this title does not apply to employment discrimination.  *See Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 419-20 (4th Cir. 2015).

discharge of a qualified employee because she is disabled.  *See Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014).[8]

A "qualified individual" is defined in the ADA as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  A disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]"  *Id.* § 12102(1); *see Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 239 (4th Cir. 2016) (quoting 29 C.F.R. § 1630.2(k)(1)).

An individual with a "a record of such an impairment," or who is "regarded as having such an impairment," is considered to have a disability.  *Id.* § 12102(1)(B)-(C).  A plaintiff has a "record of disability" if she can show that she "'has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.'"  *Foore v. Richmond*, 6 F. App'x 148, 153 (4th Cir. 2001) (quoting 29 C.F.R. § 1630.2(k)(1)).  This is "'a question of law for the court.'"  *Coghill v. Bd. of Educ. of Prince George's Cty.*, GJH-14-2767, 2017 WL 1049470, at *5 (D. Md. Mar. 17, 2017) (citation omitted), *aff'd*, 703 F. App'x 211 (4th Cir. 2017).  To resolve this question, the court must make an "an individualized inquiry, particular

---

[8] "Modeled after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* the ADA incorporates that statute's enforcement procedures, *id.* § 12117(a), including the requirement that a plaintiff must exhaust [her] administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court, *see id.* § 2000e–5(b), (f)(1)."  *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012).  The administrative claims process is "an integral part" of the enforcement scheme that Congress set out in Title VII.  *Chacko v. Patuxent Inst.,* 429 F.3d 505, 510 (4th Cir. 2005).  By incorporation, it is also integral to the ADA.  *See Sydnor*, 681 F.3d at 593. "Allowing [the EEOC] first crack at these cases respects Congress's intent 'to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'"  *Id.* (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).

to the facts of each case." *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001).  The "date of an adverse employment decision is the relevant date for determining whether a plaintiff is a 'qualified individual with a disability.'" *E.E.O.C. v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 379 (4th Cir. 2000).

The case law as to Title VII is generally applicable in the ADA context as well.  *See Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir.2001) ("[b]ecause the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—courts have routinely used Title VII precedent in ADA cases"); *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 391-92 (4th Cir. 2001) (quoting *Fox*, 247 F.3d at 176, and applying the Title VII frameworks).  This means that, as with Title VII, "[d]isability discrimination may be proven through direct and indirect evidence or through the *McDonnell Douglas* burden-shifting framework." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015) (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49-50 & n.3 (2003); *see also Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468-70 (4th Cir. 1999) (holding that Title VII's mixed-motive causation requirement, and not the Rehabilitation Act's "solely because of" causation requirement, applies to the ADA).

"To establish a claim for disability discrimination under the ADA, a plaintiff must prove '(1) that she has a disability, (2) that she is a "qualified individual" for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability.'" *Jacobs*, 780 F.3d at 572 (quoting *Stowe–Pharr Mills, Inc.*, 216 F.3d at 377).

For its part, Section 504 of the Rehabilitation Act provides, in relevant part: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance or under any program or activity . . . ."  29 U.S.C. § 794(a).  "'[P]rogram or activity' means all the operations of," *inter alia*, "department, agency, special purpose district, or other instrumentality of a State or of a local government," or "a local educational . . . system of career and technical education, or other school system," "any part of which is extended Federal financial assistance."  *Id.* § 794(b). Plaintiff asserts that BCPS is subject to the Rehabilitation Act as a recipient of federal funding (ECF 70 at 86), and the BCPS Defendants do not dispute this.

To state a prima facie claim of discrimination under the Rehabilitation Act, the plaintiff must allege that: (1) she is disabled; (2) she was otherwise qualified for the position; and (3) she suffered an adverse employment action solely on the basis of the disability.  *Perry v. Computer Sciences Corp.*, 429 F. App'x 218, 219-20 (4th Cir. 2011) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005)); *see also Nat'l Fed. of the Blind v. Lamone*, 813 F.3d 494, 502-03 (4th Cir. 2016); *Baird v. Rose*, 192 F.3d 462, 467–70 (4th Cir. 1999); *Doe v. University of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264–65 & n. 9 (4th Cir. 1995). Notably, unlike with the ADA, a plaintiff's disability must be the "sole" reason for the adverse employment action, not merely one motivating factor.  *See Baird*, 192 F.3d at 468-70.

The remedies, procedures, and rights under Title VII apply to Rehabilitation Act claims. 29 U.S.C. § 794a(a)(1); *Pinkerton v. Spellings*, 529 F.3d 513, 517 (5th Cir. 2018).  And, the Rehabilitation Act incorporates the standards used with regard to claims under the Americans with Disabilities Act.  *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995). This means that, at trial, claims under the Rehabilitation Act may be evaluated under the *McDonnell Douglas* framework.

The ADA and the Rehabilitation Act apply only if the plaintiff has suffered an "adverse employment action."   An "adverse employment action" is one that "'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *see also Laird v. Fairfax Cty.*, 978 F.3d 887, 893 (4th Cir. 2020) ("For a discrimination claim, the plaintiff must show that her employer took an action that adversely 'affect[ed] employment or alter[ed] the conditions of the workplace.'" (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006))).

Notably, the ADA and the Rehabilitation Act provide for remedies against *employers*, not individuals, unless those individuals qualify as employers.  *See, e.g.*, *Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010); *Baird*, 192 F.3d at 471-72; *Young v. Barthlow*, RWT-07-662, 2007 WL 5253983, at *2 (D. Md. Nov. 7, 2007).  Plaintiff alleges that her employer was BCPS. *See, e.g.*, ECF 70 at 100, 108-09.  Moreover, there is nothing in the allegations to suggest otherwise.  Therefore, Count I is subject to dismissal as to Boykin and Chapman.

With respect to the Board of Education of Baltimore County as an entity, the facts alleged by plaintiff do not state a claim for disability discrimination.[9]  Plaintiff identifies specific portions of her allegations as supporting this claim.  ECF 70 at 91.  These are staff members who acted surprised that plaintiff did not know a particular fact (*id*. at 86); staff members "sniffing" plaintiff, calling her "crazy" and "paranoid," and suggesting she needed therapy (*id*. at 86-87); staff members suggesting that if plaintiff complained, she would "be a target," and that "if talking too

---

[9] The BCPS Defendants do not appear to contest that plaintiff has exhausted her EEOC administrative remedies at least with respect to the disability claim.  *See* ECF 87-1 at 13-14.

much is their disability, then they need to let her know so she can know how to deal with it" (*id*. at 87); staff members saying plaintiff "look[s] a lot different" than when she started," and saying "don't let me get ICE up in here" (*id*. at 88); and "Defendant 1" mocking plaintiff and suggesting at the November 2017 meeting that she had certain mental health issues.  *Id*.

First, plaintiff argues that she was the subject of discrimination based on a "perceived disability;" in the language of the ADA, that she was "regarded" as having a disability, 42 U.S.C. § 12102(1).  To make such a claim, a plaintiff must show that "(1) her employer 'mistakenly believe[d] that [she] has a physical impairment that substantially limits one or more major life activities,' or (2) her employer 'mistakenly believe[d] that an actual, nonlimiting impairment substantially limits one or more major life activities.'"  *Rhoads v. F.D.I.C.*, 257 F.3d 373, 390 (4th Cir. 2001) (quoting *Haulbrook v. Michelin North America, Inc*., 252 F.3d 696, 702-03 (4th Cir. 2001)).  But, the allegations do not indicate that BCPS believed plaintiff had any impairment that substantially limited her major life activities.  At most, the allegations show that some BCPS staff members regarded plaintiff as having issues relating to mental or emotional health.  But, this is short of the standard required to make this claim.

Second, the allegations do not constitute "adverse employment action," as required to state a claim.  Such an action must be a "significant change in employment status."  *Hoyle*, 650 F.3d at 337 (quoting *Ellerth*, 524 U.S. at 761).  But the facts alleged in Count I constitute alleged offensive comments or behavior by other staff members.  Even if true, they do not rise to the level of adverse employment action for purposes of this claim.  Plaintiff's termination is indisputably an adverse employment action.  However, in Count I plaintiff does *not* allege termination due to disability discrimination under Count I.  Instead, she separately alleges in different counts that the

termination was part of the continuing campaign of retaliation against her for "engaging in protected activity" at CCBC.  ECF 70 at 92, 98.

In sum, plaintiff has failed to allege facts that would state a claim for disability discrimination under the ADA or the Rehabilitation Act.  Therefore, Count I is subject to dismissal.

### B.  Count II (Hostile Work Environment and Retaliation)

Count II asserts a claim of "Retaliatory Hostile Work Environment."  *Id.* at 92-93.  Plaintiff alleges violations of Title VII, the ADA, and the Rehabilitation Act.  *Id.* at 92-93.[10]  These laws provide for remedies against employers, not individuals.  *See, e.g.*, *Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010); *Baird*, 192 F.3d at 471-72; *Young v. Barthlow*, RWT-07-662, 2007 WL 5253983, at *2 (D. Md. Nov. 7, 2007).  Therefore, Count II must  be dismissed as against Boykin and Chapman.

I focus the remainder of my analysis on the claim as against the Board of Education of Baltimore County.  Furthermore, plaintiff appears to have filed an EEOC Charge against the BCPS

---

[10] Plaintiff also cites 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  A public sector employee may bring a § 1983 claim for employment discrimination in violation of the Equal Protection Clause or retaliation in violation of the First Amendment.  *See Wilcox v. Lyons*, 970 F.3d 452, 457-64 (4th Cir. 2020); *Beardsley v. Webb*, 30 F.3d 524, 526-27 (4th Cir. 1994).  But, every circuit to address the issue has held that a plaintiff "may not seek damages under § 1983 for stand-alone violations of either Title VII or the ADA," as this would allow the plaintiff to sidestep Title VII's comprehensive remedial scheme.  *See Williams v. Pa. Human Relations Comm'n*, 870 F.3d 294, 297-300 (3d Cir. 2017).

Count II asserts violations of the "Federal Anti-discrimination laws," such as Title VII and the ADA, not a constitutional violation.  ECF 70 at 92.  Therefore, § 1983 is not a viable vehicle for Count II, including against Boykin and Chapman.  *See* ECF 92 at 19.  And, § 1985 does not help plaintiff for the reasons discussed with respect to Count V, *infra*.

In Count II, plaintiff also cites the Genetic Information Nondiscrimination Act of 2008, 42 U.S.C. § 2000ff *et seq.*, the Equal Pay Act, 29 U.S.C. § 206(d), and the False Claims Act, 31 U.S.C. § 3729 *et seq.*  None of plaintiff's allegations provide any basis for a claim under these statutes.

Defendants on the basis of retaliation, and the BCPS Defendants do not appear to contest exhaustion of administrative remedies on that issue.  *See* ECF 87-1 at 13-14, 16 n.8; ECF 87-3.

Title VII bars retaliation based on an employee's opposition to conduct made unlawful by Title VII, or for participation in a Title VII investigation or proceeding. 42 U.S.C. § 2000e–3; *see e.g.*, *Evans v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019); *Ray v. Int'l Paper Co.*, 909 F.3d 661, 666 (4th Cir. 2018); *Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018); *Strothers v. City of Laurel*, 895 F. 3d 317, 326-27 (4th Cir. 2018); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc); *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014).  The purpose of Title VII's antiretaliation provision is to "[m]aintain[] unfettered access to statutory remedial mechanisms" for employees who fear reprisal.  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997). Thus, an employer violates Title VII by taking an adverse action against an employee because that employee exercised his rights under Title VII.

Like Title VII, the ADA also includes an antiretaliation provision.  *See* 42 U.S.C. § 12203 ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.").  As with the ADA generally, courts typically apply the standards for Title VII retaliation claims to ADA retaliation claims.  *See Laird v. Fairfax Cty.*, 978 F.3d 887, 893 n.5 (4th Cir. 2020); *S.B. ex rel. A.L. v. Bd. of Educ. of Hartford Cty.*, 819 F.3d 69, 78 (4th Cir. 2016); *Rhoads*, 257 F.3d at 391.  And, a plaintiff may prove retaliation either through offering direct or indirect evidence, or through the *McDonnell Douglas* burden-shifting framework.  *See, e.g.*,

*Strothers*, 895 F.3d at 327 (citing *Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015); *S.B. ex rel. A.L.*, 819 F.3d at 78; *Rhoads*, 257 F.3d at 391.

A hostile environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment[.]'"  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted).  The Fourth Circuit has recognized that a claim of retaliatory hostile work environment is a distinct cause of action.  *See Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001) ("Retaliatory harassment can constitute adverse employment action . . . ."), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006); *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 600 (D. Md. 2011), *aff'd*, 465 F. App'x 274 (4th Cir. 2012); *see also Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012) (collecting circuit decisions).

To establish a claim of retaliatory hostile work environment, a plaintiff must show that "'(1) [s]he experienced unwelcome harassment; (2) the harassment was [in retaliation for protected conduct]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.'"  *Wells v. Gates*, 336 F. App'x 378, 387 (4th Cir. 2009) (first alteration by this Court, second alteration in *Wells*) (quoting *Baqir v. Principi*, 434 F.3d 733, 745-46 (4th Cir. 2006)); *see Pueschel v. Peters*, 577 F.3d 558, 564-65 (4th Cir. 2009); *Goldstein v. Univ. of Md.*, CCB-18-2376, 2019 WL 4467035, at *10 (D. Md. Sept. 17, 2019); *Clarke v. DynCorp Int' l LLC*, 962 F. Supp. 2d 781, 790-91 (D. Md. 2013); *Thorton*, 766 F. Supp. 2d 585, 600 (D. Md. 2011).

The first element, unwelcome conduct, "is not a high hurdle."  *Strothers*, 895 F.3d at 328.  The Fourth Circuit has explained that "an employee can demonstrate that certain conduct is

unwelcome simply by voicing [his] objection . . . ."  *Id.* at 328-29.  Moreover, "the nature of the conduct may indicate whether or not the conduct is unwelcome."  *Id.* at 329.

To satisfy the second element, "the employer must have taken the adverse employment action *because* the plaintiff engaged in a protected activity."  *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original); *see also Perkins v. Int'l Paper Co.*, 936 F.3d 196, 214 (4th Cir. 2019).  Title VII ultimately requires the plaintiff to show that the "protected activity was a but-for cause of the alleged adverse action by the employer."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).  However, "[a]t the prima facie stage, a plaintiff does not have to show that 'their protected activities were but-for causes of the adverse action.'" *Perkins*, 936 F.3d at 214 (quoting *Strothers*, 895 F.3d at 335).  Nevertheless, the plaintiff must still make "some showing" of causation, such as demonstrating that the "'employer either understood or should have understood the employee to be engaged in protected activity'" and that "'the employer took adverse action against the employee soon after becoming aware of such activity.'" *Perkins*, 936 F.3d at 214 (quoting *Strothers*, 895 F.3d at 335).

As to the third element, a hostile work environment exists under Title VII when the "'workplace [is] permeated with discriminatory intimidation, ridicule, and insult . . . .'" *Boyer-Liberto*, 786 F.3d at 281 (some quotations and citation omitted) (quoting *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 339 (4th Cir. 2006)); *see Harris*, 510 U.S. at 21; *Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 158 (4th Cir. 2018). The plaintiff must allege that "the environment would reasonably be perceived, and is perceived, as hostile or abusive." *Boyer-Liberto*, 786 F.3d at 277 (citing *Harris*, 510 U.S. at 22).

The "severe or pervasive" requirement has both subjective and objective components. *Harris*, 510 U.S. at 21-22; *see EEOC v. Cent. Wholesalers Inc.*, 573 F.3d 167, 175 (4th Cir. 2009).

Thus, "[w]hether the environment is objectively hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's position.'" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)); *see Irani*, 767 F. App'x at 416; *Nnadozie*, 730 F. App'x at 158. However, the plaintiff does not need to demonstrate that the work environment is "psychologically injurious." *Id.*; *see Harris*, 510 U.S. at 21-22.

Notably, "viable hostile work environment claims often involve repeated conduct . . . because, 'in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.'" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Morgan*, 536 U.S. at 115-17); *see Irani*, 767 F. App'x at 416. But, "an 'isolated incident[]' of harassment can 'amount to discriminatory changes in the terms and conditions of employment,' if that incident is 'extremely serious.'" *Boyer-Liberto*, 786 F.3d at 277 (alterations in original) (citation omitted).

The Court stated in *Boyer-Liberto*, 786 F.3d at 278 (citation omitted): "In measuring the severity of harassing conduct, the status of the harasser may be a significant factor—e.g., a supervisor's use of [a racial epithet] impacts the work environment far more severely than use by co-equals." *See also EEOC v. Fairbrook Medical Clinic, P.A.*, 609 F.3d 320, 329 (4th Cir. 2010) ("When evaluating the context in which harassment takes place, we have often focused on the 'disparity in power between the harasser and the victim.'") (citation omitted); *Jennings v. Univ. of N.C.*, 482 F.3d 686, 697 (4th Cir. 2007) (en banc) ("Any age disparity between the harasser and his victim is also relevant to gauging whether there was a hostile or abusive sexual environment.").

However, the "'[m]ere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 21) (other citations omitted). And, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not

amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citations omitted); *see also Boyer-Liberto*, 786 F.3d at 294. Similarly, "complaints premised on nothing more than 'rude treatment by [coworkers]', 'callous behavior by [one's] superiors,' or 'a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII.'" *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) (internal citations omitted); *see Nnadozie*, 730 F. App'x at 161-62.  Indeed, Title VII does not constitute "a general civility code." *Oncale*, 523 U.S. at 80.

The determination as to "severe and pervasive" is not, and "'by its nature cannot be, a mathematically precise test.'"  *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 22). Moreover, "[n]o single factor is dispositive, as [t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Sunbelt Rentals*, 521 F.3d at 315 (quoting *Harris*, 510 U.S. at 23, and *Oncale*, 523 U.S. at 81-82) (internal citations and quotation marks omitted). The objective determination requires the court to "'look[] at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the] employee's work performance.'"  *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 304 (4th Cir. 2019) (quoting *Harris*, 510 U.S. at 23).

Applying these principles, plaintiff has failed to state a claim for retaliatory hostile work environment.  With her allegations of hurtful comments, "sniffing," and so forth, plaintiff has likely met the first element of unwelcome harassment, which "is not a high hurdle," *Strothers*, 895 F.3d at 328.  But, plaintiff has failed to allege that the harassment was sufficiently severe or

pervasive to alter the conditions of her employment and to create an abusive atmosphere. At most, she has alleged "simple teasing, offhand comments, and isolated incidents," *Faragher*, 524 U.S. at 788, and "complaints premised on nothing more than 'rude treatment by [coworkers],'" *Sunbelt Rentals*, 521 F.3d at 315-16 (internal citations omitted)—precisely what courts have said falls short of a hostile work environment claim.

In addition, plaintiff has failed adequately to allege the second element, that the harassment was in retaliation for protected conduct. Her claim seems to be that the BCPS Defendants retaliated against her for protected activity plaintiff engaged in at CCBC, which she describes as BCPS's "educational partners." ECF 70 at 92. It is not clear that what allegedly occurred at CCBC constituted protected activity. But beyond this, plaintiff has not adequately alleged that the BCPS Defendants were even aware of what occurred at CCBC, much less were retaliating against her for it. Conclusory allegations, including that certain behavior to which plaintiff was subjected at BCPS was similar to behavior she experienced at CCBC, are not sufficient to state a claim. Nor are there facts to substantiate the conclusory allegation that CCBC is BCPS's "educational partner" in any way that would be relevant to this claim. Accordingly, Count II is subject to dismissal.

### C. Count III (Intentional Infliction of Emotional Distress)

Count III asserts a state law tort claim for intentional infliction of emotional distress ("IIED").[11] ECF 70 at 93-94. Plaintiff highlights the alleged surveillance to which she was subjected by various technological means. *Id*. at 93-94.

For a state law claim, the Court must apply the law of the forum state (including as to choice of law), whether proceeding under supplemental or diversity jurisdiction, *see supra* note 3.

---

[11] Count III also refers to Title VII, the ADA, and the Rehabilitation Act. ECF 70 at 93. But, these laws do not seem to be the basis for the claim.

*See, e.g.*, *Nash v. Montgomery Cty.*, GJH-20-1138, 2021 WL 1222874, at *7 n.7 (D. Md. Mar. 31, 2021); *Ben-Joseph v. Mt. Airy Auto Transporters, LLC*, 529 F. Supp. 2d 604, 606 (D. Md. 2008). In tort actions, Maryland adheres to the *lex loci delicti* rule, meaning it applies the substantive law of the state where the wrong occurred. *Id.*, 529 F.Supp.2d at 606 (citing *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 619, 925 A.2d 636, 648-49 (2007)) (other citations omitted).  Because plaintiff's claim is premised on alleged events that occurred in Maryland, Maryland law applies.

Generally speaking, claims for IIED are disfavored, difficult to establish and, as such, "rarely viable."  *Respess v. Travelers Cas. & Sur. Co. of Am.*, 770 F. Supp. 2d 751, 757 (D. Md. 2011); *see generally Arsham v. Mayor & City Council of Balt.*, 85 F. Supp. 3d 841, 850 (D. Md. 2015); *Manikhi v. Mass. Transit Admin.*, 360 Md. 333, 367, 758 A.2d 95, 113 (2000); *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 514, 665 A.2d 297, 319 (1995) (stating that the tort of intentional infliction of emotional distress is "difficult to satisfy"), *cert. denied*, 341 Md. 172, 669 A.2d 1360 (1996); *see also* DAVID CRUMP, RETHINKING INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, 25 Geo. Mason L. Rev. 287, 297 (2018) (noting that an IIED claim is "a kind of vituperative epithet" that "adds little that can be the subject of a separate or additional recovery" but "makes [the litigation] more expensive").

In Maryland, in order to prevail on a claim for IIED, a plaintiff must show that (1) the defendant's conduct was intentional or reckless; (2) her conduct was extreme and outrageous; (3) there was a causal connection between the defendant's wrongful conduct and the emotional distress suffered; and (4) the emotional distress was severe.  *Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611, 614 (1977); *accord, e.g.*, *Caldor, Inc. v. Bowden*, 330 Md. 632, 641-42, 625 A.2d 959, 963 (1993); *Mixter v. Farmer*, 215 Md. App. 536, 548, 81 A.3d 631, 637 (2013); *Lasater v. Guttmann*, 194 Md. App. 431, 448, 5 A.3d 79, 89 (2010).

The defendant's conduct must be "'so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Arsham*, 85 F.Supp.3d at 850 (quoting *Harris*, 281 Md. at 567, 380 A.2d at 614). Indeed, "[t]o be actionable, the conduct relied upon 'must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 248 (D. Md. 1997) (quoting *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 59-60, 502 A.2d 1057, 1064, *cert. denied*, 306 Md. 118, 507 A.2d 631 (1986)), *aff'd*, 166 F.3d 1208 (4th Cir. 1998).  Moreover, since the Maryland Court of Appeals first recognized the tort of IIED in 1977, *Harris*, 281 Md. 560, 380 A.2d 611, it has repeatedly advised that "recovery" for IIED "will be meted out sparingly[.]" *Figueiredo-Torres v. Nickel*, 321 Md. 642, 653, 584 A.2d 69, 75 (1991); *see Batson v. Shiflett*, 325 Md. 684, 733, 602 A.2d 1191, 1216 (1992); *Caldor, Inc.*, 330 Md. at 642, 625 A.2d at 963.  "As inappropriate and repulsive as workplace harassment is, such execrable behavior almost never rises to the level of outrageousness, and almost never results in such severely debilitating emotional trauma, as to reach the high threshold invariably applicable to a claim of intentional infliction of emotional distress under Maryland law." *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002).

Given the high bar for IIED claims, plaintiff's allegations simply do not rise to the level necessary to state such a claim.  As noted, plaintiff primarily alleges that she was subject to mocking, poor treatment, or insinuations of mental health issues resulting from the comments of various BCPS staff members.  These comments do not constitute conduct that is "'atrocious and utterly intolerable in a civilized community.'" *Arsham*, 85 F.Supp.3d at 850 (quoting *Harris*, 281 Md. at 567, 380 A.2d at 614).  Nor does termination from employment, without more, rise to this level.

Although plaintiff discusses alleged electronic surveillance and privacy violations in Count III and throughout her Complaint, the Court is reluctant to credit them on the basis of the information provided when applying the 28 U.S.C. § 1915 standard.  The support for these allegations seems to be that several times other staff members appeared to reference topics that were the subject of plaintiff's private conversations and messages.  ECF 70 at 88-90, 94-95. Plaintiff's additional support is a series of largely conclusory or unclear references to various software programs allegedly placed on plaintiff's devices or used to monitor her, accompanied by various computer screenshots.  *Id*. at 88-89, 93-96, 106-07, 112-13, 118-19, 122-45.  In this context, these claims have crossed the line from "unlikely" to "fanciful."  Accordingly, I need not assume their truth.  *See Denton*, 504 U.S. at 32-33; *Neitzke*, 490 U.S. at 325.  In addition, a number of the allegations referred to in this Count are associated with Coates, the former defendant, rather than with the BCPS Defendants.

In any case, plaintiff's allegations do not state a claim for IIED, in view of the extreme conduct required for such a tort.  Count III must be dismissed.

### D.  Count IV (Violation of Privacy by way of Intrusion of Solitude)

Count IV asserts a claim for "Violation of Privacy by way of Intrusion of Solitude."  *Id*. at 94.  Plaintiff appears to be referring to the state law tort of intrusion upon seclusion.[12]  Again,

---

[12] Although Count IV appears to primarily assert a claim for intrusion upon seclusion, it references myriad federal constitutional provisions and statutes, including the Fourth and Fifth Amendments to the Constitution; Title VII; the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 *et seq*.; and the Privacy Act of 1974, 5 U.S.C. § 552a.  I approach this count as one for intrusion upon seclusion, but these other provisions would not affect the outcome.

ECPA provides a private right of action against anyone intentionally intercepting, attempting to intercept, or procuring any person to intercept any wire, oral, or electronic communication. 18 U.S.C. § 2511(1)(a).  At best, plaintiff makes fanciful allegations that her communications were intercepted by use of certain software programs.  But, she does not allege

because the tort is premised on events that allegedly occurred in Maryland, I must apply Maryland substantive law.

Intrusion upon seclusion is another variety of the umbrella tort of invasion of privacy.  *See, e.g., Bailer v. Erie Ins. Exchange*, 344 Md. 515, 525–27, 687 A.2d 1375, 1380–81 (1997); *Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. 133, 163–65, 502 A.2d 1101, 1116–17 (1985), *cert. denied*, 306 Md. 289, 508 A.2d 488, *cert. denied*, 479 U.S. 984 (1986).  It constitutes "'[t]he intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person.'"  *Mitchell v. Baltimore Sun Co.*, 164 Md. App. 497, 522, 883 A.2d 1008, 1022 (2005) (citation omitted), *cert. denied*, 390 Md. 501, 889 A.2d 418 (2006); *see* Restatement (Second) of Torts § 652B (1977) (describing this branch of the tort as "the intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person"); *see also Furman v. Sheppard*, 130 Md. App. 67, 73, 744 A.2d 583, 585 (2000).

Because this tort involves an "intentional intrusion upon the solitude or seclusion of another or his person or affairs," *Pemberton*, 66 Md. App. at 163, 502 A.2d at 1116, "[a]n intrusion upon seclusion claim requires that the matter into which there was an intrusion is entitled to be private and is kept private by the plaintiff." *Barnhart v. Paisano Pubs., LLC*, 457 F. Supp. 2d 590, 593

---

facts to adequately support a claim that the BCPS Defendants conducted the interceptions, attempted to do so, or procured another individual to do so.

CFAA also provides for a private cause of action for computer fraud, including unauthorized access.  In particular, it provides for a civil cause of action for "any person who suffers damage or loss by reason of a violation of this section . . . against a violator to obtain compensatory damages and injunctive relief or other equitable relief," but only if the conduct involves one of a series of enumerated facts, including "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."  18 U.S.C. § 1030(c)(4)(A)(i), (g).  The Complaint can be read to allege such a loss.  But even so, plaintiff provides only fanciful and conclusory allegations as to any relevant conduct by the BCPS Defendants.

(D. Md. 2006); *accord Fletcher v. Price Chopper Foods of Trumann, Inc.*, 220 F.3d 871, 877 (8th Cir. 2000) ("A legitimate expectation of privacy is the touchstone of the tort of intrusion upon seclusion."). Moreover, "[t]here is . . . no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object." Restatement (Second) of Torts § 652B. If the intrusion is "conducted in a reasonable and non-obtrusive manner, it is not actionable." *Pemberton*, 66 Md. App. at 164, 502 A.2d at 1117. *Compare Barnhart*, 457 F. Supp. 2d at 593 (rejecting claim for intrusion upon seclusion based on a published photograph of the partially nude plaintiff, because "plaintiff's lifting up of her shirt cannot reasonably be said to have constituted a private act," even though "at the moment she removed her shirt she was in the company of only about 10 people, all of whom she knew and trusted") *with Pemberton*, 66 Md. App. at 165, 502 A.2d at 1117 (finding claim of intrusion upon seclusion actionable based on defendants' surveillance of plaintiff in motel room through a "listening device ... attached to the door").

Again, plaintiff's allegations largely rest on fanciful and unsupported claims of surveillance. And again, much of this count focuses on Coates, described as the "orchestrator of the harassing and stalking activity." ECF 70 at 95. However, plaintiff makes no allegations of actions by the BCPS Defendants that would constitute a "substantial" "interference with the plaintiff's seclusion," of a kind "highly offensive to a reasonable person." Restatement (Second) of Torts § 652B. Accordingly, Count IV is subject to dismissal.

### E.  Count V (Conspiracy of Rights)

Count V is labelled "Conspiracy of Rights" and appears to assert violations of 18 U.S.C. § 241 (conspiracy against rights), 18 U.S.C. § 242 (deprivation of rights under color of law), and 42 U.S.C. § 1985 (conspiracy to interfere with civil rights).  *Id*. at 95-96.

Sections 241 and 242 are criminal statutes that do not provide for a private right of action. The Supreme Court has made clear that "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chi*., 441 U.S. 677, 688 (1979).

Federal rights of action, like substantive federal law, "must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)).  "To create a private right of action," the Fourth Circuit has explained, Congress must "'speak[] with a clear voice' and the statute must 'unambiguously' express the intent 'to create not just a private *right* but also a private *remedy*."  *Clear Sky Car Wash LLC v. City of Chesapeake*, 743 F.3d 438, 444 (4th Cir. 2014) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002)) (emphasis in *Gonzaga*).  Where "Congress is silent or ambiguous, courts may not find a cause of action 'no matter how desirable that might be as a policy matter.'"  *Planned Parenthood S. Atlantic v. Baker*, 941 F.3d 687, 695 (4th Cir. 2019) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001)).  This holds true for federal criminal statutes.  *See Doe v. Broderick,* 225 F.3d 440, 448 (4th Cir. 2000); *Fed Sav. & Loan Ins. Co. v. Reeves*, 816 F.2d 130, 138 (4th Cir. 1987); *accord Tam Anh Pahm v. Deutsche Bank Nat. Trust Co*., 583 F. App'x 216, 217 (4th Cir. 2014).

Sections 241 and 242 are "bare criminal statute[s], with absolutely no indication that civil enforcement of any kind [i]s available to anyone."  *Cort v. Ash*, 422 U.S. 66, 80 (1975).  Indeed,

"a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another," *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Therefore, "[a] private person may not initiate a criminal action in the federal courts." *Ras-Selah: 7 Tafari: El v. Glasser and Glasser PLC*, 434 F. App'x 236, 236 (4th Cir. 2011) (per curiam); *see also Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972) ("It is a truism . . . that in our federal system crimes are always prosecuted by the Federal Government[.]"). *See, e.g.*, *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Davis v. Sarles*, 134 F. Supp. 3d 223, 228 (D.D.C. 2015); *Shahin v. Darling*, 606 F. Supp. 2d 525, 538 (D. Del. 2009); *Wagner v. United States*, 377 F. Supp. 2d 505, 510-11 (D.S.C. 2005); *Figueroa v. Clark*, 810 F. Supp. 613, 615 (E.D. Pa. 1992); *Dixon v. State of Md. by Carter*, 261 F. Supp. 746, 749 (D. Md. 1966).

Section 1985 of 42 U.S.C. *does* provide a private cause of action for certain conspiracies to violate  constitutional rights. But, § 1985 is not a "general federal tort law." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Section 1985(3) is the only provision of the statute of any possible relevance to plaintiff's claims. The Fourth Circuit has held, *Kobe v. Buscemi*, 821 F. App'x 180, 187 (4th Cir. 2020) (citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)):

> A conspiracy claim under section 1985(3) requires the plaintiff to prove (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

Furthermore, many courts have held that "person" is defined identically in 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3), although the Fourth Circuit has not resolved this issue. *See Bumgardner v. Taylor*, RDB-18-1438, 2019 WL 1411059, at *5 (D. Md. Mar. 28, 2019) (describing the legal landscape). Of import here, "[c]ourts in this District have repeatedly and

consistently explained that Maryland county boards of education do not qualify as 'persons' within the meaning of the statute and therefore cannot be sued under § 1983." *Brown v. Prince George's County Bd. of Ed.*, GJH-18-2723, 2019 WL 3944983, at *3 (D. Md. Aug. 20, 2019).

Plaintiff has sued the Baltimore County Board of Education.  If "person" is defined in § 1985(3) as in § 1983, a § 1985(3) suit cannot be maintained against that defendant.  And approaching the claims against Boykin and Chapman as in their personal capacity, the Complaint alleges nothing close to the elements required for a § 1985(3) claim, as enumerated above.

The count is premised primarily on the same fanciful allegations of electronic surveillance. ECF 70 at 95-97.  Beyond this, the count cites the incidents involving the Employee Referral Form and plaintiff's therapist.  *Id*. at 95-97.  There are no specific allegations against Boykin and Chapman, and no allegations (aside from a conclusory reference to the Fourteenth Amendment, *id*. at 95) as to the violation of constitutional or legal rights.  Even assuming, *arguendo*, that the Baltimore County Board of Education was a proper defendant for a § 1985(3) claim, plaintiff still would not have alleged sufficient facts to make out such a claim.

As none of the statutes cited by plaintiff provides a proper basis for suit, Count V must be dismissed.

### F.  Count VI (Defamation)

Count VI asserts various claims for defamation.  ECF 70 at 97-98.  The BCPS Defendants have asserted that this count is time-barred.  *See* ECF 87-1 at 23.

For a state law claim such as this one, I must apply the substantive law of the forum state, including its statute of limitations.  *See Brown v. Am. Broad. Co*., 704 F.2d 1296, 1299 (4th Cir. 1983); *see also Coe v. Thermasol, Inc*., 785 F.2d 511, 514 n.5 (4th Cir. 1986) (noting that "federal

courts sitting in diversity apply the forum state's statute of limitations").  Therefore, I shall apply Maryland law.

Maryland law provides for a one-year statute of limitations for defamation claims.  Md. Code (2020 Repl. Vol.), § 5-105 of the Courts and Judicial Proceedings Article ("C.J.").  This statute "begins to run 'when the plaintiff knew or reasonably should have known that the defendant committed a wrongful act which injured or damaged the plaintiff.'"  *Hickey v. St. Martin's Press, Inc.*, 978 F. Supp. 230, 235 (D. Md. 1997).  Or, phrased differently, "all libel and slander claims must be filed within one year of the date on which the damaging statements were improperly communicated."  *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 508, 665 A.2d 297, 316 (1995).

"As a general rule, the party raising a statute of limitations defense has the burden of proving that the cause of action accrued prior to the statutory time limit for filing the suit."  *Newell v. Richards*, 323 Md. 717, 725, 594 A.2d 1152, 1156 (1991).  A trial court ordinarily does not grant a motion to dismiss "based on the assertion that the cause of action is barred by the statute of limitations unless it is clear from the facts and allegations on the face of the complaint that the statute of limitations has run."  *Litz v. Maryland Dep't of Env't*, 434 Md. 623, 641, 76 A.3d 1076, 1086 (2013); *accord Rounds v. Maryland-Nat. Capital Park & Planning Comm'n*, 441 Md. 621, 655, 109 A.3d 639, 659 (2015).

Plaintiff filed this lawsuit on February 7, 2020.  *See* ECF 2 at 5.  The specific activities or actions constituting defamation in Count VI all are described as occurring between March of 2018 and January 3, 2019.  ECF 70 at 97.  And, plaintiff was terminated in January 2019.  So, it does not appear that any of the BCPS work incidents alleged in the Complaint would have occurred on or after February 7, 2019, one year before plaintiff filed the lawsuit.  However, the Complaint fails

to give dates or timeframes for many of the allegations, including some labelled defamatory, and the Complaint does not elsewhere illuminate this issue. *Id.* Furthermore, at one point plaintiff alleges that the "defame followed her" to Philadelphia, including in February 2019, within the limitations period. *Id.* at 98. Given that it must be "clear from the facts and allegations on the face of the complaint that the statute of limitations has run," *Litz*, 434 Md. 623, 641, 76 A.3d 1076, 1086, I cannot say definitively that plaintiff's defamation claims are time-barred.

Assuming that some of plaintiff's defamation claims are not time-barred, however, they do not state a claim. The tort of defamation consists of four elements: "'(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm.'" *Id.*; *see also Sullivan v. City of Frederick*, JKB-17-1881, 2018 WL 337759, at *8 (D. Md. Jan. 9, 2018) (quoting *Offen*).

Under Maryland law, "'[a] defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person.'" *Norman v. Borison*, 418 Md. 630, 645, 17 A.3d 697, 705 n.10 (2011) (quoting *Offen v. Brenner*, 402 Md. 191, 198-99, 935 A.2d 719, 723-24 (2007)). A statement is false if it was "'not substantially correct.'" *Piscatelli v. Van Smith*, 424 Md. 294, 306, 35 A.3d 1140, 1147 (2012) (quoting *Batson v. Shiflett*, 325 Md. 684, 726, 602 A.2d 1191, 1213 (1992)). The plaintiff bears the burden of establishing falsity. *Batson*, 325 Md. at 726, 602 A.2d at 1213.

"Although a plaintiff need not plead a defamation claim under the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, the pleadings in a defamation case must still be sufficiently detailed to enable a defendant to appropriately respond." *Estate of*

*Jones v. St. Thomas More Nursing & Rehab Ctr.*, PJM 09-1419, 2009 WL 3247929, at *3 (D. Md. Oct. 1, 2009); *see Hatfill v. New York Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005) ("While the Federal Rules of Civil Procedure require more specific pleading in certain cases, defamation cases are not among them.").  Thus, a "plaintiff may not baldly allege a broad course of conduct over a lengthy period of time and later sue on any act that occurred during that time period." *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862, 1999 WL 89125, at *3 (4th Cir. 1999) (unpublished table decision).  Moreover, every "alleged defamatory statement constitutes 'a separate instance of defamation,' which 'a plaintiff must specifically allege.'" *Gainsburg v. Steben & Co.*, 838 F. Supp. 2d 339, 344 (D. Md. 2011) (quoting *English Boiler*, 1999 WL 89125, at *3); *see also Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 758 (D. Md. 2015) ("To satisfy federal pleading standards, a plaintiff must specifically allege each defamatory statement.").

Plaintiff's allegations fall woefully short under these principles.  Her allegations are conclusory, vague, and unclear.  When specific, they refer to simple insults or mockery of plaintiff (such as calling her "hot pants" or "hot mess"), without alleging the statements were false or other requisite elements.  ECF 70 at 97.  In other instances, they refer to plaintiff's fanciful allegations of hacking and surveillance.  *Id.*  The allegations generally do not refer to any specific incident or statement, but are simply vague and conclusory assertions.  *E.g.*, *id.* ("Although the items and exhibits mentioned in this count are of published content and acts, they are accompanied by statements and treatment of Plaintiff by staff which gives a complete defamatory concept.").

The Complaint is in no way "sufficiently detailed to enable a defendant to appropriately respond," as is required for a defamation claim.  *Estate of Jones*, 2009 WL 3247929, at *3.  Therefore, even if plaintiff's allegations are not time-barred, she has failed to state a claim, and Count VI is subject to dismissal.

43

### G.  Count VII (Wrongful Termination)

Count VII asserts "Wrongful Termination."  ECF 70 at 98-99.  The case cited by plaintiff, *Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981), is a Maryland case that concerns the tort of wrongful termination.[13]  The BCPS Defendants interpret Count VII as asserting a claim for wrongful termination under Maryland law.  ECF 87-1 at 24.

As explained, because this claim is premised on events that occurred in Maryland, state law applies.  Construed as asserting a claim for wrongful termination under State law, this count fails to state a claim.

An employment agreement may either be for a fixed term or at will.  *Shapiro v. Massengill*, 105 Md. App. 743, 754, 661 A.2d 202, 207 (1995).  An employment contract is deemed at will when it does not expressly specify a particular time or event terminating the relationship.  *Id.*, 661 A.2d at 208.  In general, an employer or an employee may terminate an at-will employment relationship at any time, for almost any reason or no reason.  *Id.*

Plaintiff does not allege in the Complaint whether her employment was at will or contractual.  Material previously submitted by plaintiff indicates that her BCPS employment was considered at will.  *See* ECF 22-5 at 15.  In any event, under Maryland law, a claim of wrongful termination is available to an at will employee, "contractual employees in the middle of their contractual terms," and, in some contexts, contractual employees whose contracts have not been

---

[13] Plaintiff alleges in this claim that the "defame [sic] followed her" to Philadelphia, where she "was fired from employment" after one month for the "same activity" experienced at BCPS and her other Maryland employers.  ECF 70 at 98.  However, the claim appears focused on her dismissal from BCPS, which occurred in Maryland.  She provides no detail about what might have occurred in Philadelphia, and this action is against the BCPS Defendants, not an employer in Philadelphia.  *Cf. Ben-Joseph*, 529 F. Supp. 2d at 606 ("Where the events giving rise to a tort action occur in more than one state, the court must apply 'the law of the State where the injury—the last event required to constitute the tort—occurred.'" (Internal citations omitted)).

renewed. *Miller-Phoenix v. Baltimore City Bd. of School Comm'rs*, 246 Md. App. 286, 296-301, 228 A.3d 809, 815-17 (2020).

"For an at-will employee to establish wrongful termination 'the employee must be discharged, the basis for the employee's discharge must violate some clear mandate of public policy, and there must be a nexus between the employee's conduct and the employer's decision to fire the employee.'" *Yuan v. Johns Hopkins Univ.*, 452 Md. 436, 451, 157 A.3d 254, 262 (2017) (quoting *Wholey v. Sears Roebuck*, 370 Md. 38, 50-51, 803 A.2d 482, 489 (2002)). "[T]he theory of public policy embodies a doctrine of vague and variable quality, and, unless deducible in the given circumstances from constitutional or statutory provisions, should be accepted as the basis of a judicial determination, if at all, only with the utmost circumspection." *Adler*, 291 Md. at 46, 432 A.2d at 472. Furthermore, the Maryland Court of Appeals has held that because the "generally accepted reason for recognizing the tort" is "that of vindicating an otherwise civilly unremedied public policy violation," the tort does not apply to cases alleging employment discrimination prohibited by Title VII or the Maryland Fair Employment Practices Act, because the law already supplies a civil remedy. *Makovi v. Sherwin-Williams Co.*, 316 Md. 603, 626, 561 A.2d 179, 190 (1989).

For this reason, a wrongful termination claim by plaintiff must fail. Plaintiff alleges violations of statutes, principally Title VII and the ADA, for which causes of action and civil remedies already exist. Indeed, it is these remedies that form the major part of her Complaint. Thus, she may not bring a wrongful termination claim on the basis of these allegations.

Alternatively, some of the wording of this count suggests that plaintiff is simply alleging retaliatory discharge, in violation of Title VII and the ADA.[14]  If so, the count fails to state a claim, for many of the reasons discussed in regard to Count II, *supra*.

"A plaintiff may prove that an employer took action with discriminatory or retaliatory intent through direct evidence or through the [*McDonnell Douglass*] burden-shifting framework." *Strothers*, 895 F.3d at 327 (citing *Foster*, 787 F.3d at 249).  To state a claim for retaliation, a plaintiff must allege "'that (1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action.'"  *Okoli v. City of Balt.*, 648 F.3d 216, 223 (4th Cir. 2011) (citation omitted); *see Strothers*, 895 F.3d at 327; *Guessous*, 828 F.3d at 217; *Smyth-Riding v. Sci. Eng'g Servs., LLC*, 699 F. App'x 146, 151 (4th Cir. 2017); *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005).  The requirements are essentially identical under both Title VII and the ADA.  *See Laird*, 978 F.3d at 893 n.5; *S.B. ex rel. A.L.*, 819 F.3d at 78; *Rhoads*, 257 F.3d at 391.

To establish causation, the plaintiff bears the burden of demonstrating that the alleged retaliation "would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360; see also *Irani v. Palmetto Health*, 767 F. App'x 399, 421 (4th Cir. 2019) (per curiam).  The plaintiff may proceed either by direct evidence "or by proving that any non-retaliatory justification for the [adverse action] was pretextual." *Netter*, 908 F.3d at 938; see *Foster*, 787 F.3d at 249.

---

[14] Plaintiff also cites the ADEA, but alleges no facts to support a claim of age discrimination.

Nevertheless, "establishing a 'causal relationship' at the prima facie stage is not an onerous burden." *Strothers*, 895 F.3d at 335; *see Smith v. CSRA*, ___ F.4th ___, 2021 WL 3889282, at *14 (4th Cir. Sept. 1, 2021).  Indeed, "very little evidence of a causal connection is required to establish a prima facie case of retaliation." *Roberts v. Glenn Industrial Group, Inc.*, 998 F.3d 111, 127 (4th Cir. 2021) (citing *Burgess v. Bowen*, 466 F. App'x 272, 283 (4th Cir. 2012)); *see Smith*, 2021 WL 3889282, at *14.  "An employee may establish *prima facie* causation simply by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." *Strothers*, 895 F.3d at 335-36.

"A plaintiff may attempt to demonstrate that a protected activity caused an adverse action 'through two routes.'" *Roberts*, 998 F.3d at 123 (quoting *Johnson v. United Parcel Service, Inc.*, 839 F. App'x 781, 783-84 (4th Cir. 2021)); *see Smith*, 2021 WL 3889282, at *14.  "A plaintiff may establish the existence of facts that 'suggest[ ] that the adverse action occurred because of the protected activity.'" *Roberts*, 998 F.3d at 123 (citing *Johnson*, 839 F. App'x at 783-84; *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (recognizing that relevant evidence may be used to establish causation)).  Or, a plaintiff may demonstrate that "the adverse act bears sufficient temporal proximity to the protected activity." *Johnson*, 839 F. App'x at 784 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).

The Fourth Circuit recently made clear in *Smith* that the *McDonnell Douglas* proof scheme applies to a retaliation claim.  *Smith*, 2021 WL 3889282, at *13.  Moreover, temporal proximity is not the sole avenue to establish causation.  *Id*. at *14.  Rather, temporal proximity is one of two paths to show causation.

Termination, such as that experienced by plaintiff, is unquestionably an adverse action. But, plaintiff has failed adequately to allege that this adverse action was causally connected to any protected activity on her part, even at the modest level required at this stage of the litigation.  As in Count II, plaintiff's argument for this count appears to be that the BCPS Defendants "discharged [her] as ongoing retaliation stemming from CCBC."  ECF 70 at 98.  Again, even assuming that anything that occurred at CCBC constituted protected activity, plaintiff has not adequately alleged that the BCPS Defendants were aware of what occurred at CCBC or were retaliating against her for it by terminating her.  *Cf. Strothers*, 895 F.3d at 335-36.  Nor has plaintiff alleged any other facts that "'suggest[ ] that the adverse action occurred because of the protected activity.'"  *Roberts*, 998 F.3d at 123 (citing *Johnson*, 839 F. App'x at 783-84; *Lettieri v. Equant Inc*., 478 F.3d 640, 650 (4th Cir. 2007)).  The only allegations in this regard are conclusory, the fanciful claims of hacking and espionage, or some claims that certain behavior to which plaintiff was subjected at BCPS was similar to behavior to which she was subjected at CCBC.

Whether Count VII is approached as a claim for the tort of wrongful termination or a retaliatory discharge claim under Title VII or the ADA, it should be dismissed.  For the reasons discussed, *supra*, plaintiff has failed to state a claim for any of her counts, and the Complaint should therefore be dismissed.

## IV.     Motions for Joinder

In a "kitchen sink" approach, plaintiff has submitted six different motions for "joinder," seeking to add as defendants persons and entities with no connection to her employment claims. These are to join, respectively, "Baltimore County Government and the State of Maryland" (ECF 97); "the Department of Homeland Security and the Department of Defense" (ECF 98); Emmitt Davis, Jr., her former husband (ECF 101); the CCBC "Continuing Education Department

(CONED)" (ECF 104); Alexis Coates (ECF 105); and various entities of "the City of Philadelphia" (ECF 108).  For the reasons that follow, I will deny each motion.

Some of plaintiff's motions cite Rule 19 of the Federal Rules of Civil Procedure, which governs required joinder.  As explained by the Fourth Circuit in *Teamster Local Union No. 171 v. Keal Driveway Co.*, 173 F.3d 915, 917-18 (4th Cir. 1999): "Rule 19 creates a two-step inquiry: first, whether a party is necessary to a proceeding because of its relationship to the matter under consideration;[ ] and second, if a necessary party is unavailable, whether the proceeding can continue in that party's absence.[ ] If it cannot, the party is indispensable and the action should be dismissed."  (Internal citations omitted); *see also Am. Gen. Life and Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005) (discussing Rule 19 joinder requirements).

Some of plaintiff's motions cite Rule 20 of the Federal Rules of Civil Procedure, which governs permissive joinder.  Fed. R. Civ. P. 20 permits a plaintiff to join parties in a single action if (1) a right to relief is asserted against the defendants with respect to the same transaction, occurrence, or series of transactions or occurrences; and (2) a common question of law or fact will arise in the action.  Fed. R. Civ. P. 20(a)(2).  Although the transaction or occurrence test of Rule 20 permits all "reasonably related claims . . . to be tried in a single proceeding," *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (quoting *Moseley v. Gen. Motors Corp.*, 497 F.2d 1300, 1333 (8th Cir. 1974)), "[m]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder*," Raw Films, Ltd. v. Does 1–32*, No. 3:11-cv-532, 2011 WL 6182025, at *2 (E.D. Va. Oct. 5, 2011) (quoting *Laface Records, LLC v. Does 1–38*, No. 5:07-cv-298, 2008 WL 544992, at *2 (E.D.N.C. Feb. 27, 2008)).  Thus, simply having a number of claims, whether valid or not, against a number of parties, does not mean all those cases may necessarily be combined into one.  *See* 7 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE

49

§ 1653 ("Joinder of parties under Federal Rule of Civil Procedure 20(a) is not unlimited . . . the failure to find that the claims involving proposed Rule 20 parties arise out of a common transaction or that a common question is presented will result in joinder being denied.").

Furthermore, Rule 20 grants courts "wide discretion concerning the permissive joinder of parties." *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007).  If joinder will result in prejudice, expense, or delay, the court has discretion to deny joinder.  *Id.*

Because plaintiff's motions fail even under the more lenient standard of Rule 20, there is no need to analyze them under Rule 19, regardless of whether plaintiff captioned the motions as ones under "Rule 19" or "Rule 20".  *See*, e.g., *Lanier Bus. Prod. v. Graymar Co.*, 342 F. Supp. 1200, 1202 n.7 (D. Md. 1972) (noting that because the parties met the requirements for Rule 20 "there is no need to determine whether they would meet joinder requirements of Rule 19, since the two rules provide alternative means of adding parties to a suit"); see also 7 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1604 (describing the Rule 20 permissive joinder test as "much broader and encompassing" than that for Rule 19).  Therefore, I will analyze each motion under Rule 20.

### A.  ECF 97 ("Baltimore County Government" and "State of Maryland")

ECF 97 seeks to join "the Baltimore County Government" and "the State of Maryland." The apparent basis for this motion is that these entities "oversee" CCBC, BCPS, and Coates, the former defendant.  *Id.* at 1.

As a preliminary matter, most of plaintiff's claims against the "State of Maryland" would be barred by state sovereign immunity.[15]  The Eleventh Amendment to the Constitution "embodies

---

[15]  The sovereign immunity bar would not apply to the "Baltimore County Government." Sovereign immunity "does not immunize political subdivisions of the state, such as municipalities and counties, even though such entities might exercise a 'slice of state power.'"  *Ram Ditta v. Md.*

the principle of sovereign immunity and prohibits suit by private parties against states in federal courts." *Weller v. Dep't of Soc. Serv's for City of Balt.*, 901 F.2d 387, 397 (4th Cir. 1990).  The Supreme Court has explained: "Although by its terms the Amendment applies only to suits against a State by citizens of another State, our cases have extended the Amendment's applicability to suits by citizens against their own States." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) (collecting cases); *see, e.g., Virginia Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011); *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 618 (2002); *Kimmel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000). Thus, "the ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Garrett*, 531 U.S. at 363.

Put simply, states are generally immune from suit for damages in federal court, absent consent or a valid congressional abrogation of sovereign immunity.  See *Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35 (2012); *Va. Office for Prot. & Advocacy*, 563 U.S. at 253-54; *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 903 (2020). Congress has validly abrogated state sovereign immunity as to Title VII, *see Fitzpatrick v. Bitzer*, 427 U.S. 445, 447-57 (1976), which would permit plaintiff's apparent Title VII claim against these entities (*see* ECF 97 at 1) to go forward.  But this exception does not apply to plaintiff's wide number of other apparent claims, which cite various statutes, constitutional provisions, and common law torts.  And, because plaintiff is seeking "damages" (ECF 97 at 6), the additional exception for suits against state officials for prospective injunctive relief for violations of federal law does not apply.  *See Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004).

---

*Nat. Capital Park & Planning Comm'n*, 822 F.2d 456, 457 (4th Cir. 1987) (quoting *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979)).

In addition, as noted, *supra*, both Title VII and the ADA impose an administrative exhaustion requirement through the EEOC before a plaintiff may pursue a suit in federal court. *See Sydnor*, 681 F.3d at 593; *Chacko*, 429 F.3d at 510.  There is no indication or allegation that plaintiff has met this requirement with respect to these two entities.  This would likely present an obstacle to any Title VII or ADA claims plaintiff seeks to bring here.

Even putting aside these issues, almost none of the allegations in this motion relate to the BCPS Defendants, or indeed to any activity by Baltimore County or the State of Maryland. Instead, plaintiff merely repeats her fanciful allegations of espionage, "[i]llegal [s]urveillance," and "experimentation" (*id*. at 2), describing a wide variety of claimed misconduct by public and private actors—federal, state, and local—in both Pennsylvania and Maryland.  She makes no specific allegations as to the conduct of any agency or official in Maryland or Baltimore government purportedly overseeing CCBC or BCPS.

Simply put, the allegations do not suffice to demonstrate a right to relief with respect to the same transaction, occurrence, or series of transactions or occurrences, nor any common question of law or fact.  And, insofar as these allegations relate to the BCPS Defendants, I have already concluded that plaintiff has failed to state a valid claim with respect to these defendants. Accordingly, I shall deny ECF 97.

## B.  ECF 98 ("Department of Homeland Security" and "Department of Defense")

ECF 98 seeks to join "the Department of Homeland Security and the Department of Defense."  Plaintiff alleges that these agencies "oversee and work closely" with CCBC, BCPS, and others to conduct the campaign of discrimination and retaliation against her. *Id*. at 1.  Most of this motion simply restates plaintiff's fanciful allegations of espionage and hacking, which are largely directed against other persons.

To the extent plaintiff alleges any involvement by the Department of Homeland Security or the Department of Defense, it is with vague, unclear, and conclusory references to their supposed participation in the electronic surveillance against plaintiff.  There is no basis to conclude that there is any common question of law or fact as to these government agencies, nor any right to relief with respect to the same transaction, occurrence, or series of transactions or occurrences.  In addition, insofar as plaintiff makes claims against these two entities under Title VII, there is no allegation or suggestion that administrative remedies have been exhausted.  I shall deny ECF 98.

### C.  ECF 101 (Davis)

In ECF 101, plaintiff seeks to join her former husband, Emmitt Davis, Jr.  Plaintiff alleges conspiracy, violations of privacy, fraud, perjury, and IIED against Davis in connection with Davis's alleged surveillance of plaintiff and plaintiff's "minor child," and in regard to the divorce and custody proceedings between Davis and plaintiff.  *Id*. at 1-4.

The allegations in ECF 101 appear largely to be repackaged versions of the allegations against Davis in plaintiff's First Amended Complaint.  *Compare* ECF 40 at 46-51 *with* ECF 101 at 1-4.  I previously dismissed the claims against Davis for failure to state a claim.  *See* ECF 81 at 32-37.  The principal new allegation appears to be related to Davis's conduct at a family court hearing involving Davis and plaintiff on February 12, 2021.  ECF 101 at 1-2.

Regardless, I do not find that joinder of Davis is appropriate.  Except insofar as both the Complaint and the joinder motion make many of the same fanciful allegations of surveillance, hacking, and conspiracy, none of the allegations against Davis in the joinder motion mention the BCPS Defendants or indeed appear related to them at all.  Thus, there is no credible basis to conclude there is any common question of law or fact, nor any right to relief with respect to the same transaction, occurrence, or series of transactions or occurrences.  Nor may plaintiff simply

repackage and re-file in a joinder motion allegations against Davis that were previously dismissed. *See, e.g.*, *Shakouri v. Davis*, 923 F.3d 407, 410 (5th Cir. 2019) ("We have repeatedly stated that a claim qualifies as malicious [under 28 U.S.C. § 1915] if it is virtually identical to and based on the same series of events as a claim previously brought by the plaintiff." (internal citation omitted)). Accordingly, I shall deny ECF 101.

### D. ECF 104 (CCBC – Continuing Education Department)

ECF 104 seeks to join the CCBC "Continuing Education Department (CONED)."[16] Plaintiff accuses CCBC of a vast array of misconduct, including disability discrimination in violation of the ADA; privacy violations; illegal wiretapping; hostile work environment and retaliation in violation of Title VII and the ADA; "Sexual Exploitation;" IIED; constructive discharge; defamation; and more. *Id*. at 1-11. She seeks more than $26 million in damages. *Id*. at 13. Many of plaintiff's claims in ECF 104 are based upon the same unclear, unsupported, conclusory, or fanciful allegations of espionage, surveillance, and conspiracy that she had previously asserted. Other allegations, however, relate to hurtful comments, "sniffing," and retaliation by CCBC. *Id*. at 3, 5-7.

The allegations contained in ECF 104 do provide greater detail and background as to plaintiff's claims against the BCPS Defendants. As mentioned, plaintiff's claims in the Complaint often alleged retaliation by the BCPS Defendants for plaintiff's conduct and experiences while at CCBC. But, this does not suffice to make joinder appropriate. Plaintiff provides no allegations in ECF 104 that link her experiences at CCBC with her experiences at BCPS, nor that provide any

---

[16] ECF 104 cites "Md. R. Civ. P. Cir. Ct. 2-211." The Federal Rules, not the Maryland Rules, govern, even for claims premised in state law. *See, e.g.*, *Nat'l Union Fire Ins. Co. v. Rite Aid of S.C.*, 210 F.3d 246, 248-54 (4th Cir. 2000) (applying Fed. R. Civ. P. 19 in a diversity case). Regardless, the rules are similar and the outcome would be the same under either provision.

reason to think that the BCPS Defendants were aware of what occurred at CCBC or were retaliating against plaintiff because of it.  Setting aside the fanciful allegations of surveillance and conspiracy, at most ECF 104 contains claims that plaintiff was treated in certain ways at CCBC that were similar to certain ways plaintiff was treated at BCPS.  "Merely committing the same type of violation in the same way does not link defendants together for purposes of joinder."  *Raw Films, Ltd.*, 2011 WL 6182025, at *2 (quoting *Laface Records, LLC*, 2008 WL 544992, at *2).  And, I have already ruled that plaintiff's Complaint fails as to the BCPS Defendants.  Therefore, I shall deny ECF 104.

### E.  ECF 105 (Coates)

ECF 105 seeks to join Alexis Coates, alleged to be an "IT professional" deeply involved in the campaign of electronic surveillance and harassment against plaintiff.  Plaintiff asserts claims of "Intrusion of Solitude," stalking and cyberstalking, "Conspiracy Against Rights," and other statutory violations.  *Id.* at 1-6.  These fanciful allegations are largely repackaged versions of allegations made by plaintiff against Coates in her First Amended Complaint.  *See* ECF 40 at 34-38.

I previously dismissed these claims under 28 U.S.C. § 1915 as made "without any viable factual supporting allegations."  ECF 81 at 38.  The same analysis applies here.  As with Davis, plaintiff may not simply repackage and re-file in a joinder motion allegations against Coates that were previously dismissed.  I shall deny ECF 105.

### F.  ECF 108 (City of Philadelphia Entities)

In ECF 108, plaintiff seeks to join two entities affiliated with the City of Philadelphia: the "Department of Homeless Services" and the "24th/25th Police District."  ECF 108 at 1.  Plaintiff alleges that she and her minor child were harassed by residents while she was staying at a

Department of Homeless Services shelter. *Id.* at 2. She also alleges that when she contacted the Philadelphia Police, she received no assistance and was "ridiculed." *Id.* at 2-3. She asserts that these issues "are directly related and connected to this claim" because residents at the Philadelphia shelter allegedly knew of, and discussed, what happened at CCBC and the "espionage software" installed on plaintiff's technology in Baltimore. *Id.* at 1-3. These tangential connections do not create a common question of law or fact, nor any right to relief with respect to the same transaction, occurrence, or series of transactions or occurrences.

Furthermore, even if there were a common question of law or fact, my analysis rejecting plaintiff's previous attempt to join Gloria's Place, a Philadelphia homeless shelter, would apply here. *See* ECF 81 at 38-40. This District is not a proper venue for claims against these two City of Philadelphia entities.

Under 28 U.S.C. § 1391(b), venue is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Pursuant to 28 U.S.C. § 1406(a), if venue is filed in the improper district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

These two entities are located in Philadelphia, and all of the alleged misconduct giving rise to the claims occurred in Philadelphia. *See* ECF 105 at 1-3. This is not altered by the handful of references to CCBC or Baltimore. Venue does not lie in Maryland. *See, e.g.,* 14D WRIGHT &

56

MILLER, FEDERAL PRACTICE AND PROCEDURE § 3827 ("If venue is proper for some defendants but improper for others, the district court has wide discretion," including "retain[ing] the case as to those defendants who have been properly sued there and sever and transfer the portion of the case for those defendants for whom venue is improper or dismiss the action as to those defendants"). Accordingly, I shall deny ECF 105.

## V.       Proposed Amended Complaint and Motion to Strike

As noted, plaintiff filed a third "Amended Complaint" on June 1, 2021, containing additional claims and defendants. ECF 89. However, she did not seek leave of court before filing this amended complaint. The BCPS Defendants have moved to strike the complaint. ECF 91. They argue that, in addition to plaintiff's failure to seek their consent or leave of the Court, the amendment is futile and granting leave to amend would prejudice them. *Id*. at 2-4.

Much of ECF 89 repeats various factual allegations against the BCPS Defendants already made in the Complaint. See ECF 89 at 1-26. There are several mentions of CCBC (e.g., *id*. at 2-4, 11-12), although it is unclear if plaintiff seeks to add CCBC as a defendant. In addition, there are cursory references to several statutes not mentioned in the Complaint, including the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.; the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq*.; and the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. § 651 *et seq*. (ECF 89 at 7-10, 20-23).

The remainder of ECF 89 is an effort to add claims against the U.S. Department of Education (the "Department"). ECF 89-1. Plaintiff asserts numerous claims against the Department, including defamation, invasion of privacy, retaliation, "unlawful surveillance," conspiracy, IIED, and more. *Id*. at 2-14.

The factual allegations against the Department largely consist of vague or conclusory assertions that the Department is involved in the retaliation, surveillance, and other nefarious conduct plaintiff alleged in the Complaint.  For example, plaintiff alleges that the Department "took Plaintiffs [sic] privacy" (*id*. at 4) or "blocked Plaintiffs [sic] ability to become employed with Child Link in Philadelphia" (*id*. at 5).  However, plaintiff never alleges how the Department was involved in any of these activities.  Plaintiff also alleges at various points that she was "employed" by the Department (*id*. at 4, 9, 12) but, read as a whole, this appears to be a reference to plaintiff's employment with CCBC and BCPS; plaintiff has never previously alleged that she was employed by the Department.

A complaint may be amended "once as a matter of course" within twenty-one days of service of a defendant's answer or motion under Fed. R. Civ. P. 12(b), (e), or (f), "whichever is earlier." Fed. R. Civ. P. 15(a)(1)(b).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

In general, leave to amend should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).  "Rule 15(a) grants the district court broad discretion concerning motions to amend pleadings, and leave should be granted absent some reason 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment.'" *Booth v. Maryland*, 337 F. App'x 301, 312 (4th Cir. 2009) (per curiam) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Under Rule 15(a), a "proposed amendment is futile when it is 'clearly insufficient or frivolous on its face.'"  *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp*., 914 F.3d 213, 228 (4th Cir. 2019) (quoting *Johnson v. Orowheat Foods*, 785 F.2d 502, 510 (4th Cir. 1986)).  A

proposed amendment is also futile if it would add a new claim that fails to state a claim upon which relief could be granted, and thus would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Save Our Sound OBX*, 914 F.3d at 228; *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019); see also *Martin v. Duffy*, 858 F.3d 239, 247-48 (4th Cir. 2017) (affirming denial of leave to amend on futility grounds where the plaintiff's "pleading deficiency cannot be cured by amendment of his complaint"), *cert. denied*, ___ U.S. ___ 138 S. Ct. 738 (2018); *U.S. Airline Pilots Ass'n v. Awappa*, LLC, 615 F. 3d 312, 320 (4th Cir. 2010) (stating that a court need not grant leave to amend where the amendment would have "no impact on the outcome of the motion to dismiss").

Moreover, Fed. R. Civ. P. 12(f) permits a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." However, motions to strike are "generally viewed with disfavor." *Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). Given the harsh consequences of a motion to strike, courts ordinarily require some showing that the moving party will suffer prejudice if the offensive portion of the pleading is not stricken. *See Haley Paint Co. v. E.I. Du Pont De Nemours & Co.*, 279 F.R.D. 331, 337 (D. Md. 2011) (denying motion to strike affirmative defenses because "Plaintiffs have articulated no prejudice that would result from a denial of their motion").

Although the Federal Rules approach amendment liberally, they are not without limit. I will deny plaintiff's attempt to amend her complaint a third time, first and foremost because the attempt is futile. With respect to the BCPS Defendants, the proposed amended complaint largely repeats the factual allegations and claims already laid out in the Complaint. Insofar as there is any new factual detail, none of it addresses any of the issues discussed *supra* that have prevented plaintiff from stating a claim. Perhaps the most notable new factual assertion is a description of

plaintiff's visit to a counselor at "New Perspectives" via the EAP program.  ECF 89 at 18.  The counselor allegedly described plaintiff as suffering from "depression" and "paranoia."  *Id*.  This new fact is potentially of relevance to plaintiff's claim of disability discrimination (Count I), as it may indicate that plaintiff was perceived as having some sort of impairment.  But, nothing in ECF 89 links this perception to any BCPS staff member, including any of the staff members who allegedly made offensive comments to plaintiff.  Thus, this new allegation does not alter the conclusion in Count I.

Insofar as plaintiff seeks to add CCBC as a defendant through ECF 89 (and it is unclear that she does), her various references to CCBC are vague, conclusory, or insufficient to establish any sort of claim against CCBC.  *See id*. at 2-4, 11-12.  Although plaintiff makes glancing references to "violations" of the FLSA, NLRA, and OSHA, she does not provide any specifics, nor assert any allegations that would state a claim under those statutes.  *See id*. at 7-10, 20-23.  In sum, the amendment would have "no impact on the outcome of the motion to dismiss."  *U.S. Airline Pilots Ass'n*, 615 F.3d at 320.

Nor do plaintiff's proposed claims against the Department fare any better.  "[A] court determining whether to grant a motion to amend to join additional plaintiffs must consider both the general principles of amendment provided by Rule 15(a) and also the more specific joinder provisions of Rule 20(a)," which have been discussed supra.  *Hinson v. Norwest Financial S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. 2001) (internal citation omitted).  Looking to Rule 15, the amendment would be futile.  The proposed amendment merely repackages the existing allegations in the Complaint, but adds a number of vague, conclusory, and fanciful assertions relating to the Department's role, none of which is supported by any detail or specificity.  These allegations are then used to support the same plethora of claims that have already failed as against the BCPS

Defendants.  The Court is not required to allow these claims to proceed against a new defendant. Likewise under Rule 20, given the type of allegations presented, there is no credible basis to conclude there is any common question of law or fact, nor any right to relief with respect to the same transaction, occurrence, or series of transactions or occurrences.

Beyond the futility factor, plaintiff has already amended her complaint twice.  With the latest proposed amendment, she did not attempt to obtain consent of BCPS Defendants or the Court.  Instead, plaintiff has filed the third amended complaint without presenting any justification as to why a third amendment is necessary.  In addition, when I permitted plaintiff to amend her complaint for a second time, I noted there would be no prejudice to the BCPS Defendants, "as they have yet to be served or respond to the suit."  ECF 81 at 43-44.  That is no longer the case, as the BCPS Defendants have not only been served but have filed the Motion, which has been fully briefed.

Under the circumstances, I will not permit plaintiff to amend her complaint a third time. Therefore, I shall grant Defendant's Motion to Strike (ECF 91), and I will not consider the material in ECF 89.

## VI.    Plaintiff's Other Motions

As noted, plaintiff has filed a number of other miscellaneous motions and documents.  I discuss them in turn.

### A.   ECF 102

On June 23, 2021, about a month after the Motion was filed, plaintiff submitted a document titled, in relevant part: "Plaintiffs [sic] Answers to Defendants [sic] Motion."  ECF 92.  Then, on August 2, 2021, after the BCPS Defendants replied, plaintiff submitted a similarly titled document. *See* ECF 102-1.  The Court rejected the submission as an improper surreply and returned the

submission on August 3, 2021. ECF 99. Then, on August 13, 2021, in ECF 102, plaintiff moved for leave to file her earlier submission. *See* ECF 102-2.

The filing of a surreply is within the Court's discretion. *See* Local Rule 105.2(a). "But, they are generally disfavored." *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013)*, aff'd in part*, 778 F.3d 463 (4th Cir. 2015); *see also, e.g., Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013). A surreply is ordinarily permitted when the party seeking to file the surreply "would be unable to contest matters presented to the court for the first time" in the opposing party's reply. *Clear Channel Outdoor, Inc. v. Mayor & City Council of Baltimore*, 22 F. Supp. 3d 519, 529 (D. Md. 2014) (quotations and citations omitted). I do not see any circumstance rendering a surreply appropriate here. Therefore, I will deny plaintiff's motion (ECF 102).

### B. ECF 103

Plaintiff has filed a pleading entitled "Memorandum for Leave of Court to take Civil Action to Enjoin the Obstruction of Justice." ECF 103. The exact purpose of the submission, and the relief it seeks from the Court, are unclear. The submission cites 18 U.S.C. § 1514, which it describes as authorizing the Court to "restrain the 'harassment' of crime victims and witnesses or to prevent and restrain imminent or existing violations" of 18 U.S.C. § 1512 and § 1513.

To the extent that the submission seeks action from the Court, pursuant to 18 U.S.C. § 1514, it is improper. Section 1514 authorizes certain temporary restraining orders and protective orders to protect victims and witnesses from harassment. But, it only applies in the context of a "Federal criminal case or investigation." 18 U.S.C. § 1514(a)(1), (b)(1). This is a civil case, not a criminal case or investigation.

## C. ECF 109

Plaintiff has filed a "Motion for Leave of Court to Order a Cease and Desist." ECF 109. The motion seeks a "permanent" "injunction" "against the Defendants . . . to dismiss all activity of retaliation/harassment with Plaintiff as the target." *Id.* Plaintiff also appears to request that this injunction apply to the Department of Education, Department of Defense, Department of Homeland Security, CCBC, and "Federal Bureau of Investigations," although none of these entities are parties to the case.

To obtain a permanent injunction, "[a] plaintiff must demonstrate: (1) that [she] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits [for a preliminary injunction] rather than actual success." *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987); *see also Bethesda Softworks, LLC v. Interplay Entertainment Corp.*, 452 F. App'x 351, 353 (4th Cir. 2011). "An injunction 'is not granted as a matter of course' and 'whether to grant the injunction still remains in the 'equitable discretion' of the [district] court' even when a plaintiff has made the requisite showing." *Bethesda Softworks*, 452 F. App'x at 353.

Plaintiff has not met the standard required for a permanent injunction. As discussed, *supra*, plaintiff has not demonstrated actual success on the merits on any of her claims (or even a likelihood of success on the merits, as would suffice for a preliminary injunction). Nor has plaintiff

demonstrated that remedies available at law, such as damages, are inadequate to compensate for her alleged injuries, especially given that she makes claims for substantial damages (some $45.6 million) in her Complaint.  *See* ECF 70 at 101.  Moreover, although an injunction can bind non-parties "in active concert or participation" with parties (or their officers, agents, servants, employees, and attorneys), *see* Fed. R. Civ. P. 65(d)(2)(C), plaintiff has not made such a showing with respect to the various non-parties she seeks to bind with her requested injunction. Accordingly, I will deny ECF 109.

### D. ECF 110

Plaintiff has filed a "Memorandum for Leave of Court."  ECF 110.  This filing "requests the Court to "move if possible to add criminal charges" against both Davis and Coates.  *Id.* at 1. Plaintiff accuses both Davis and Coates, *inter alia*, of "unlawful surveillance, threatening, torture," and "endangering the welfare of a child."  *Id*.

Neither Davis nor Coates are presently parties to this action, and I have rejected plaintiff's attempts to re-join them.  More fundamentally, "this Court cannot file criminal charges or direct that they be filed."  *Smith-El v. Wexford Health Sources Inc.*, WDQ-13-893, 2013 WL 1832560, at *1 (citing *Otero v. U.S. Att'y Gen.*, 832 F.2d 141, 141-42 (11th Cir. 1987) (per curiam)).  And, as a private citizen, plaintiff does not have standing to bring criminal charges against another; that is the role of the prosecution.  *See Linda R.S. v. Richard D*., 410 U.S. 614, 619 (1973) (stating private individuals have no constitutional or other right to a criminal investigation, nor any judicially cognizable interest in the prosecution or non-prosecution of another).  Thus, I shall deny ECF 110.

### E. ECF 114

Plaintiff has filed a "Memorandum for Leave of Court to Include Evidence and Charge Considerations."  ECF 114.  This filing "request[s] the court re-consider" certain evidence related to alleged spyware programs, and "requests . . . the court to consider the RICO Act" in this action. *Id*. at 1-2.  In addition, the filing asks the Court to issue a "cease order" "[p]roviding the Plaintiff and her minor child protection from law enforcement and their local agents," who have allegedly been "follow[ing]" plaintiff.  *Id*. at 2.  Defendants have responded in opposition.  ECF 115.

I shall deny ECF 114.  The consideration of the allegations mentioned in this filing would not alter the outcome of any of part of this decision, *supra*.  Nor is the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*., of relevance to this case.  Finally, as to plaintiff's request for a "cease order," the persons against whom she seeks the order are not parties to this case, and plaintiff has not presented evidence that would justify any sort of order.

### VII.   Conclusion

For the aforementioned reasons, I shall grant the BCPS Defendants' Motion to Dismiss (ECF 87).  I shall also grant the BCPS Defendants' Motion to Strike (ECF 91).  And, I shall deny plaintiff's joinder motions (ECF 97; ECF 98; ECF 101; ECF 104; ECF 105; ECF 108).  I shall also deny plaintiff's other motions or filings (ECF 102; ECF 103; ECF 109; ECF 110; ECF 114).

An Order follows, consistent with this Memorandum Opinion.


Date: October 13, 2021                                    _____/s/_____

                                                                              Ellen L. Hollander
                                                                              United States District Judge